**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**CHERYL A. MCGILL,**

**Plaintiff,**

**Civil Action 2:20-cv-2940**
**Judge James L. Graham**
**Magistrate Judge Elizabeth P. Deavers**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, Cheryl A. McGill, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for supplemental social security income and disability insurance benefits. This matter is before the Court for consideration of Plaintiff's Statement of Errors (ECF No. 15), the Commissioner's Memorandum in Opposition (ECF No. 20), and the administrative record (ECF No. 10). Plaintiff has not filed a reply memorandum. For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

## I. BACKGROUND

Plaintiff protectively filed her applications for benefits on October 20, 2015, alleging disability beginning September 18, 2015. (R. at 332-345.) At her initial hearing, Plaintiff amended her alleged disability onset date to September 8, 2015 and requested a closed period of disability ending November 17, 2016, when she returned to work full time. (R. at 67.) Plaintiff alleged right hand carpal tunnel syndrome; tendonitis; Graves Disease; Hypertension;

hyperlipidemia; chronic kidney disease; hypothyroidism; arthritis in hips, elbows, hands and right knee; elevated liver enzymes; lump in right breast; and burning foot pain. (R. at 99.) Plaintiff's applications were denied initially and upon reconsideration. (R. at 99-122; 123-148.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 208-209.)

Administrative Law Judge Noceeba Southern ("ALJ") held a hearing on December 13, 2017, at which Plaintiff, represented by counsel, appeared and testified, along with George W. Coleman, III, a vocational expert. (R. at 63-98.) On May 14, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 149-177.) On November 21, 2018, the Appeals Council issued a remand order directing the ALJ to:

> Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations. In so doing, evaluate the treating and nontreating source opinions pursuant to the provisions of 20 CFR 404.1527 and 416.927, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating and nontreating sources to provide additional evidence about what the claimant can still do despite the impairment (20 CFR 404.1512 and 416.912). The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating sources.
>
> Obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(R. at 178-182.)

On April 5, 2019, the same ALJ held a second hearing at which Plaintiff, again represented by counsel, appeared and testified, along with vocational expert, Jerry A. Olsheski. (R. at 39-62.) On April 23, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 12-38.) On April 9, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-6.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

## II. HEARING TESTIMONY

### A. Plaintiff's Testimony[1]

Plaintiff, who was fifty-nine years old at the time of her first administrative hearing, testified, in response to questioning from her counsel, that she stopped working at SK Food Group and did not work from September 2015 through November 2016 because she "was off under a doctor's care" and was informed via phone call that there was no longer a position for her. (R. at 76.) She explained that she was unable to go out and get a job during the relevant time period because she "fell into a deep depression." (*Id.*) In response to questioning from the ALJ, Plaintiff further explained that she was unable to find something else because she knew she would not be able to take a job that required her to stand on her feet. (*Id.*) When questioned by counsel, Plaintiff testified that she was having problems with both feet but had surgery on one. (R. at 76-77.) She described her left foot as worse than the other. (R. at 77.)

[1]The Court limits its analysis of the hearing testimony and medical evidence to the issues raised in Plaintiff's Statement of Errors.

During the relevant time period, her symptoms included a "bulging bunion" that, if touched, sent pain all the way up her leg and caused a sensation "like somebody was sticking pins in them," especially in her "heel area." (*Id.*) Plaintiff stated that this is why she had surgery and that, because her toe had to be broken and screws were inserted, post-surgery her foot does not "feel good at all" and instead feels "like stepping on a rock or something." (*Id.*) Plaintiff confirmed that she was told that the "pins and needles feeling" was plantar fasciitis. (R. at 78.) Further, Plaintiff testified that the symptoms and pain in her feet are "always present" and sometimes "worse." (*Id.*) Her prescription orthotics no longer helped. (*Id.*) When asked by counsel to explain the length of time she could be on her feet and the length of time needed to rest, Plaintiff eventually explained that she could be on her feet for 20 to 30 minutes at a time but would then need to rest for "maybe a couple hours." (R. at 80-81.)

At the time of her second administrative hearing, Plaintiff was 60 years old. (R. at 44.) Plaintiff testified that during the period at issue here, her "biggest physical problem" was "[d]ealing with [her] thyroid and [her] feet." (R. at 49.) When questioned by her counsel, Plaintiff essentially reiterated her previous testimony with respect to her plantar fasciitis. (R. at 51-53.) Plaintiff also testified that during the relevant time period she lived with her boyfriend, they split the household duties, and there was no household chore that caused her any physical problems. (R. at 55-56.) She explained that she spent most of her time sitting in a recliner with her feet up but that that did not help the issues with her feet. (R. at 56.) She described her typical day as "[j]ust moping around the apartment," sometimes not getting dressed, eating, or answering the door. (*Id.*)

## III. MEDICAL RECORDS

### A. E. Donald Zoog, DPM

Plaintiff began seeing Dr. Zoog, a podiatrist, on November 6, 2015, for treatment after having been seen in the emergency room with a chief complaint of bilateral foot pain on September 21, 2015. (R. at 617, 734-736.) Dr. Zoog diagnosed bilateral foot pain, pes planus of both feet, and hallux valgus deformities of both feet. (R. at 736.) Plaintiff was later diagnosed with plantar fasciitis, bilateral. (R. at 742.) Over the course of several appointments on November 6, 2015, December 28, 2015, January 11, 2016, February 8, 2016, and March 7, 2016, despite Plaintiff's reports of bilateral foot pain, Dr. Zoog noted Plaintiff's gait and posture were normal. (R. at 735, 737, 741, 774, 908.) At one point, Dr. Zoog recommended functional orthotics. (R. at 742.) On April 15, 2016, Plaintiff underwent surgery on her left foot, including a bunionectomy and metatarsal osteotomy. (R. at 911.) At a follow-up appointment on May 25, 2016, Plaintiff reported that her "left foot feels pretty good." (R. at 918.) At that same appointment, Dr. Zoog noted that "Examination reveals that the hallux is in excellent alignment. The skin has healed well primarily. X-ray three views reveal good position of the first metatarsal capital fragment and fixation. So far progress is good." (*Id.*) On July 25, 2016, Plaintiff reported to Dr. Zoog that she was continuing to have heel and arch pain and Dr. Zoog noted that "Examination reveals pain to palpation at the plantar medial aspect of both heels and arches." (R. at 919.) At appointments on August 29, 2016 and November 14, 2016, Dr. Zoog again described Plaintiff's posture and gait as normal and administered steroid injections into her feet. (R. at 920-921; 925-927.)

On February 10, 2016, Dr. Zoog completed a physical capacity evaluation stating, in relevant part, that Plaintiff had "no limit" on her ability to stand or walk during an 8-hour day and could frequently twist, stoop/bend, crouch, climb stairs, and climb ladders. (R. at 776-777.)

**B. State Agency Consultants**

At the initial level, in his physical residual functional capacity assessment dated December 6, 2015, Dr. William Bolz opined, in relevant part, that Plaintiff could stand or walk for a total of 6 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday; occasionally climb ramps/stairs and kneel; never climb ladders, ropes or scaffolds, or crawl; and frequently balance, stoop and crouch. (R. at 106, 117.) At the reconsideration level, in her assessment dated February 21, 2016, Dr. Lynne Torello provided a similar opinion, although she concluded that Plaintiff could occasionally climb ladders/ropes/scaffold and crawl. (R. at 131, 143.)

## IV. ADMINISTRATIVE DECISION

On April 23, 2019, the ALJ issued her decision. (R. at 15-32.) The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2022. (R. at 18.) At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or

not engaged in substantially gainful activity during the closed period between her alleged onset date of September 18, 2015 and November 17, 2016. (R. at 15, 18.) The ALJ found that Plaintiff had the severe impairments of degenerative disc disease; plantar fasciitis and depressive disorder. (R. at 18.) She further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21.) At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can climb ramps or stairs, kneel and crawl; frequently balance, stoop and crouch; and must avoid ladders, ropes or scaffolds, moving, hazardous or heavy machinery, and exposure to unprotected heights. The claimant is limited to occasional changes and occasional decision making so as to provide low stress.

(R. at 23.)

Relying on the VE's testimony, the ALJ determined that Plaintiff is able to perform her past relevant work as a packer. (R. at 32.) She therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.*)

---

equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial

right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff advances one contention of error: the ALJ's decision is internally inconsistent because, after concluding that the Plaintiff's plantar fasciitis was a severe impairment, the ALJ does not appear to have included any related limitations in the RFC. (ECF No. 15 at 9.) By extension, Plaintiff further argues that, because the ALJ's line of reasoning cannot be followed, her decision fails to rely on substantial evidence. The Undersigned disagrees and finds that the ALJ's decision is supported by substantial evidence.

Initially, contrary to Plaintiff's argument, it is not necessarily inconsistent to recognize plantar fasciitis as a severe impairment and to articulate an RFC that does not contain any plantar fasciitis-related limitations. As the Sixth Circuit has explained:

> The RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard* [*v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002)]. "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, No. 00–10446–BC, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004). *Howard* does not stand for the proposition that all impairments deemed "severe" in step two must be included in the hypothetical. The regulations recognize that individuals who have the same severe impairment may have different RFCs depending on their other impairments, pain, and other symptoms. 20 C.F.R. § 404.1545(e).

*Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *see also Wright v. Comm'r of Soc. Sec.*, No. 2:16-cv-297, 2017 WL 4339670, at *2 (S.D. Ohio Sept. 29, 2017) ("Accordingly, the mere fact that the ALJ's RFC determination did not contain migraine-related limitations does not make the RFC inconsistent with the ALJ's finding at step two that Plaintiff's headaches amounted to a severe impairment."); *Morris v. Comm'r of Soc. Sec.*, No.1:16-cv-433,

2017 WL 1159809, at *6 (W.D. Mich. Mar. 29, 2017) (rejecting contention of error that "if the ALJ found Plaintiff's migraines to be a severe impairment, then he was required to include limitations for that impairment in the RFC"); *Simpson v. Comm'r of Soc. Sec.*, No. 1:13-cv-640, 2014 WL 3845951, at *9 (S.D. Ohio Aug. 5, 2014) ("Thus, an individual can have a severe impairment, *i.e.*, one that more than minimally affects work ability, and still retain the RFC to do a wide variety of work. Put another way, the existence of a severe impairment says nothing as to its limiting effects."). For this reason alone, there is no merit to Plaintiff's statement of error on this issue.

Moreover, Plaintiff's suggestion that the ALJ failed to include any postural limitations directed to her plantar fasciitis is not an accurate representation of the record. To the extent that Plaintiff is arguing that substantial evidence does not support the ALJ's RFC finding, that argument also lacks any basis in a fair reading of the ALJ's opinion. Plaintiff bears the burden of providing the necessary medical evidence to demonstrate her impairments cause functional limitations resulting in disability. 20 C.F.R. §404.1512(c). Where the ALJ has properly considered Plaintiff's evidence and substantial evidence supports her conclusion, "this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005.)

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). When

considering the medical evidence and calculating the RFC, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted).

An ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

Here, Plaintiff explains her substantial evidence argument in this way:

> Plaintiff asserts another line of analysis is to consider substantial evidence. Because of the inconsistency between the Step 2 severity finding regarding bilateral plantar fasciitis and the step 4/5 RFC finding containing no restrictions relating to plantar fasciitis, it necessarily follows that one or the other of these findings does not rely on substantial evidence.

(ECF No. 15 at 11.) This argument wholly lacks merit.

Although the Plaintiff's limited and fairly undeveloped argument does not warrant much discussion, the Undersigned will address it briefly. The ALJ thoroughly addressed and considered Plaintiff's plantar fasciitis and substantial evidence supports the ALJ's assessment of

Plaintiff's RFC. At step two, the ALJ specifically found that Plaintiff's plantar fasciitis was a severe impairment but concluded at step three that it did not meet or equal a listed impairment. (R. at. 21) At step four, the ALJ carefully considered the hearing testimony, the medical evidence, the medical opinions, and explained the bases for the limitations in his RFC. (R. at 23-31.) For example, the ALJ accorded some weight to the opinions of the state agency reviewing consultants, giving greater weight to their opinions as to a light work limitation and specific postural limitations. (R. at 30.) In doing so, the ALJ ultimately increased the postural limitations beyond those determined at the reconsideration level by requiring that Plaintiff avoid ladders, ropes or scaffolds "in light of her combined feet and back impairments." (R. at 30.) Further, the ALJ noted Dr. Zoog's repeated observations that Plaintiff exhibited normal gait and posture, normal strength and sensation, and pain-free range of motion in her lower extremity joints. (*Id.*) As a result, the ALJ found Dr. Zoog's opinion regarding Plaintiff's ability to walk and stand to be "eminently reasonable" but again included more restricted postural limitations in the RFC in light of Plaintiff's testimony. (R. at 30-31.) Additionally, the ALJ reasonably assessed Plaintiff's testimony regarding her foot issues, explaining at some length why it enjoyed only limited support from the medical evidence of record and Plaintiff does not contend otherwise. (R. at 24-26.) Accordingly, the Undersigned concludes that the ALJ specifically considered Plaintiff's severe impairment of plantar fasciitis and sufficiently accounted for any limitations related to that condition in the RFC. Plaintiff has provided no evidence to the contrary.

Finally, Plaintiff also appears to challenge the validity of the VE testimony to the extent it relies on the ALJ's assessed RFC. (*Id.*) This argument also fails.

"In the Sixth Circuit, a VE's testimony must be based on a hypothetical question that accurately portrays the claimant's physical and mental impairments." *Mitchell v. Comm'r of Soc. Sec.*, No. 13-cv-01969, 2014 WL 3738270, at *11 (N.D. Ohio July 29, 2014) (citing *Parley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)); *see also Parrish v. Berryhill*, No. 1:16-cv-1880, 2017 WL 2728394, at *10 (N.D. Ohio June 8, 2017) ("Testimony from a vocational expert—in response to a hypothetical question—may constitute substantial evidence that a claimant retains the ability to perform specific jobs, so long as the hypothetical question accurately accounts for a claimant's physical and mental impairments.") (citing *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 845 (6th Cir. 2005)), *adopted by* 2017 WL 2720332 (N.D. Ohio June 23, 2017). Nevertheless, "[t]he rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (citing *Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp. 2d 489, 497 (E.D. Mich. 2005)). Accordingly, it is "well established that an ALJ...is required to incorporate only those limitations accepted as credible by the finder of fact" into a hypothetical question. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 250 (6th Cir. 2016) (finding ALJ's hypothetical questions to the vocational expert "fairly portrayed" the claimant's limitations as supported by the objective evidence and that "the ALJ was under no obligation to include" limitations that he found not credible in such hypotheticals); *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 494 (6th Cir. 2016) (rejecting contention that the ALJ erred by relying on VE testimony given in response to hypothetical that did not incorporate all of claimant's limitations

"because the ALJ's hypothetical question incorporated all of the functional limitations that he found to be credible").

As discussed above, the ALJ adequately explained the basis for the RFC. (R. at 23-31.) As to Plaintiff's contention that the ALJ erred in not addressing her plantar fasciitis, the ALJ noted the numerous reports of her normal posture and gait. (R. at 30.) The ALJ's view is supported by substantial evidence in the record as noted. Specifically, Dr. Zoog did not opine as to any limitations regarding Plaintiff's ability to walk or stand (R. at 776-777) and the State agency consultants concluded that Plaintiff could stand or walk up to 6 hours of an eight-hour workday. (R. 106, 117, 131, 143.) Again, Plaintiff has failed to offer anything to the contrary beyond argument.

Accordingly, it would not be error for the ALJ to decline to incorporate such limitations into the resulting residual functional capacity or the corresponding hypothetical questions. As explained above, hypothetical questions need only incorporate those limitations which the ALJ has accepted as credible. *Parks v. Soc. Sec. Admin*., 413 F. App'x 856, 865, 2011 WL 867214, *9 (6th Cir. 2011). Moreover, the ALJ was entitled to rely on the vocational expert's testimony, since it was based on a residual functional capacity that was based on substantial evidence. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512–13 (6th Cir. 2010); *Parrish*, 2017 WL 2728394, at *10. For these reasons, the Court finds no merit to any argument Plaintiff may be raising on this issue.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the

Commissioner's decision be **AFFIRMED**.

**PROCEDURE ON OBJECTIONS**

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted).

Date: July 22, 2021

/s/ *Elizabeth A. Preston Deavers*
ELIZABETH A. PRESTON DEAVERS
UNITED STATES MAGISTRATE JUDGE